Peter Ehrhardt, State Bar No. 8006016
peter@mail.kenailaw.com
**LAW OFFICE OF EHRHARDT & KELLEY**
215 Fidalgo Ave, Ste 205
Kenai, AK 99
Ph: (907) 283-2876 / Fax: (907) 283-2896

Richard D. McCune (California State Bar No. 132124)*
Email: rdm@mccunewright.com
Jae (Eddie) K. Kim (California State Bar No. 236805)*
Email: jkk@mccunewright.com
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Ph: (909) 557-1250 / Fax: (909) 557-1275

Taras Kick (California State Bar No. 143379)*
Email: taras@kicklawfirm.com
G. James Strenio (California State Bar No. 177642)
Email: jstrenio@yahoo.com
Thomas A. Segal (California State Bar No. 222791)
Email: thomas@kicklawfirm.com
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard
Santa Monica, California 90401
Ph: (310) 395-2988 / Fax: (310) 395-2088
*Pro Hac Vice* Applications to be submitted

Attorneys for Plaintiff, Brian Reith and the Putative Class

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRIAN REITH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALASKA USA FEDERAL CREDIT UNION, DOES 1 through 10,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>(1) **Breach of Contract;**<br>(2) **Violation of the State Consumer Protection Laws;**<br>(3) **Unjust Enrichment/Restitution;**<br>(4) **Money Had And Received;**<br>(5) **Negligence**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Brian Reith ("Plaintiff"), by his attorneys, hereby brings this class and representative action through this action against Alaska USA Federal Credit Union ("AFCU" or "Defendant") and DOES 1-10. All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or his counsel, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. This is a class and representative action brought by Plaintiff to assert claims in his own right, in his capacity as the class representative of all others similarly situated, and in his representative capacity as a private attorney general on behalf of the members of the general public. This class action seeks monetary damages, restitution, punitive damages, and injunctive relief against Defendant AFCU arising from AFCU's breach of its contracts with consumers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that AFCU charged overdraft fees for transactions for which there were money in the checking account to cover the transactions, thereby breaching the express terms of its consumer contract. Plaintiff also alleges that by AFCU providing inaccurate and misleading overdraft information to its customers, under Federal Electronic Funds Transfer Act, 12 C.F.R. § 1005, it was not authorized to assess overdraft fees to consumers for ATM and non-recurring debit card charges. However, AFCU did not assess its customers overdraft fees on ATM and non-recurring debit card charges.

## PARTIES

2. Plaintiff is a resident of Kenai Peninsula Borough, Alaska, and at all times relevant herein, maintained his AFCU personal consumer checking and savings account at a branch in Alaska.

3. Based on belief, Defendant Alaska USA Federal Credit Union (hereinafter referred to as "AFCU" or "Defendant"), is a federally chartered credit union with its headquarters in Anchorage, Alaska with locations in Alaska, California, Arizona and Washington State.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein as DOES 1 through 10 inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to insert the true names and capacities of these defendants when the same have been discovered. Each of the defendants designated herein as a "DOE" is legally responsible in some manner for the conduct alleged herein.

5. There exists, and at all times herein mentioned, existed, a unity of interest and ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are alter egos in that the named defendants effectively operate as a single enterprise, or are mere instrumentalities of one another.

6. At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

7. Whenever in the complaint reference is made to any act, deed, or conduct of a defendant corporation, the allegation means the defendant corporation engaged in the act,

deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the defendant corporation's ordinary business and affairs. (Doe Defendants are collectively referred to herein and are included in the term "Defendant.")

8. As to the conduct alleged herein each act was authorized ratified or directed by Defendants' officers, directors, or managing agents.

## FACTUAL ALLEGATIONS

A. **AFCU's Unlawful Overdraft Program**

9. AFCU is an Alaska-based credit union that provides banking services in Alaska, Arizona, Washington State and California. One of the services offered by AFCU to consumer banking customers is a checking account. One of the benefits AFCU offers with a checking account is a debit card that can be used for a variety of transactions including buying goods and services, as well withdraw from ATM machines, withdraw cash from the branches, schedule ACH (Automated Clearing House transactions) such as certain recurring payments, and other type of transaction items that debit from the checking account. AFCU checking account also offers the ability to write checks from the account. In connection with processing debit items (including debit card, ATM, check, ACH and other types of transactions), AFCU charges overdraft fees when it determines the account is overdrawn.

10. Credit Unions have increasingly turned to overdraft fees as an important income source. According to the June 11, 2013 report entitled CFPB Study of Overdraft Programs[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14). That reflects an increase of 15% in overdraft fees from 2007 to 2012 (p. 16). Overdraft and NSF fees now generate over 50% of all fees, and constitute 11.6% of net income (p. 15) for credit unions.

11. The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrafted their account by

---

[1] http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

-4-

CLASS ACTION COMPLAINT

Case 3:15-cv-00125-JWS Document 1 Filed 07/24/15 Page 4 of 17

mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", p.4) More than 60% of the transactions that resulted in a large overdraft fee were for less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", p.8). More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (Id, p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee. (Id., p. 10).

12. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and nonwhite account holders are among those who were more likely to be assessed overdraft fees. (Id, p.1). A 25 year old is 133% more likely to pay an overdraft penalty fee than a 65 year old. (Id, p.3). More than 50% of the customers assessed overdraft fees earned under $40,000 per year. (Id, p.4). Nonwhites are 83% more likely to pay an overdraft fee than whites. (Id, p.3).

13. In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees, using methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues have occurred over the past few years. The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount in the hundreds of millions of dollars as well as changes in their overdraft practices.

14. Furthermore, the federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies. In 2010, the Federal Reserve Board enacted regulation that financial institutions were only permitted to charge overdraft fees on ATM and one-time debit card charges if they obtained the affirmative consent of the customer. 12 C.F.R. § 1005.17 ("Opt In Rule").

15.     To qualify as affirmative consent, the opt-in notice must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft.
- The opt-in consent must be obtained separately from other consents and acknowledgements.
- The consent cannot serve any purpose other than opting into the overdraft program.
- The consent cannot be a pre-selected checked box.
- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program

If the financial institution did not obtain proper affirmative consent from the consumer that meets all of the requirements of the Opt in Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

16.     For all times relevant to this complaint, AFCU has had an overdraft program in place for assessing overdraft fees on certain transaction which is contrary to the express terms of its contracts with members, is contrary to how AFCU represents its overdraft program to its members, and is contrary to what consumers would expect as to when they would be assessed overdraft fees. AFCU contracts with its members in the Share Account Disclosure Statement that:

> Debit Card Overdraft Services (Overdraft Services) allow Alaska USA to approve signature-based Visa Debit Card transactions **when there are insufficient funds in the checking share to cover the requested amount**. . . The credit union's Courtesy Pay fee applies to items paid under this service….
>
> The Courtesy Overdraft Payment Program (Courtesy Pay) is a non-contractual

overdraft program that allows Alaska USA to pay certain debits presented against checking shares **when there are insufficient funds to cover the transaction**. Courtesy Pay applies to checks and ACH transactions; it does not apply to debit card transactions. The Courtesy Pay fee is listed on page 13 of this disclosure.

(Ex. 1, Share Account Disclosure Statement, p. 10 (emphasis added)).

17. Based on information and belief, AFCU opt-in agreement for Overdraft Services either explicitly or implicitly conveyed to customers that it would charge overdraft fees on ATM and non-recurring transactions only when there were not sufficient funds or money to cover or pay the transaction.

18. AFCU's contractual promise in the Share Account Disclosure Statement and Opt-in Agreement to only charge overdraft fees when there are not sufficient funds or money in the account to pay the item, was also provided to customers in other disclosures and marketing materials it provided to customers.

19. However, AFCU's actual practice when assessing an overdraft fee on a transaction is to ignore whether there is enough money/sufficient funds to pay the transactions, and instead makes the automated decision on assessing overdraft fees based on an artificial internal balance (available balance) rather than the actual balance. The available balance is the actual balance minus anticipated debits and credits in the future (that may or may not occur in the future). The use of available balance rather than the actual balance to determine when a transaction is overdrawn and subject to an overdraft fee is directly contrary to the language in the contracts. The result is that AFCU improperly charges members overdraft fees even when there is money/sufficient funds in the account to pay the items.

20. This practice is in breach of AFCU's account agreement. Further, the practice of charging overdraft fees even when there is sufficient money/funds in the account is inconsistent with how AFCU describes the circumstances of when it assesses overdraft fees in other customer materials. Further, AFCU has failed to inform customers the conditions under

which overdraft fees will be assessed in both the account agreement and other consumer materials.

21.     Therefore, Plaintiff, on behalf of himself and all others similarly situated, seeks relief as set forth below.

**B.      Unlawful Overdraft Fees Assessed to Plaintiff Brian Reith**

22.     Plaintiff was harmed by the practice of charging overdraft fees when there were sufficient funds in the account to cover the transaction. Plaintiff entered into an agreement with AFCU, where AFCU would only charge overdraft fees if there was not money/sufficient funds to cover the transaction at time of posting. However, ACFU has charged Plaintiff overdraft fees even when he had sufficient funds to pay the transaction. For example on or around February 2014 Plaintiff was charged a $20.00 overdraft fee despite the fact that the account was never in the negative. While the statements are confusing and difficult to understand, it appears on February 26, 2014, Plaintiff was charged a $20 overdraft fee for a $3.99 debit card purchase despite the fact that the actual balance following that transaction was a positive $75.59. A complete evaluation of AFCU's records is necessary to determine the full extent of Plaintiff's harm from this practice.

## VENUE AND JURISDICTION

23.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the claims of plaintiffs, aggregated together, exceed $5,000,000 and (2) some putative class members are citizens of different states than the defendant. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because at the time of the transaction giving rise to this lawsuit, Plaintiff was a resident of Alaska.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this case, and each of his respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23.

//

//

//

The "Classes" are composed of:

**The Sufficient Funds Class:**

> **All AFCU customers who were assessed overdraft fees for transactions when there were sufficient funds in their checking account to cover the transactions since July 23, 2011.**

**The Regulation E Class:**

> **All AFCU customers were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of an opt-in form which provided inaccurate or misleading information on AFCU's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction since July 23, 2011.**

25.     The information needed to provide the specific beginning date for the class and the end date for the class is in the possession and control of Defendant and will be the subject of discovery.  The class definition in the motion for class certification may be amended to provide a different beginning date and ending date for the class based on information provided in discovery.

26.     Excluded from the above Class is any entity in which Defendant has a controlling interest, and officers or director of Defendant, this Court and its employees and any employee of the law firm representing Plaintiff and the putative class.

27.     The members of the Class are so numerous that a joinder of all members would be impracticable.  While the exact number of the members of the Class is unknown to Plaintiff at this time and can be determined only by appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

28.     Membership in the Class is ascertainable.  Upon information and belief,

Defendant retains the databases, or other documentation, of transactions and account enrollment which will be analyzed by an expert to ascertain all members of the Class who have been harmed by the practice. Further, the Class definition identifies groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

29. A well-defined community of interest in the questions of law or fact involving and affecting all members of the Class exists, and common questions of law or fact are substantially similar and predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class members include, among others, the following:

    a. Whether Defendant had standardized Membership Account Agreement and Disclosures during the class period that was provided to customers;

    b. Whether Defendant had standardized Opt-In Agreements during the class period that was provided to customers;

    c. Whether Defendant breached that customer agreements by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had sufficient funds/money to cover the transactions; and,

    d. Whether Defendant's conduct violated the 12 C.F.R. 1005.17 and other applicable laws.

30. Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful and/or unlawful conduct are substantially the same for Plaintiff and all of the Class members.

31. Plaintiff will fairly and adequately protect the interests of the Class members.

Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. Plaintiff and his counsel intend to prosecute this action vigorously.

32. The class action is superior to all other available methods for the fair and efficient adjudication of this case or controversy. Because the injury suffered by the Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Class members individually to seek redress for the alleged wrongful conduct. Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed. The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

### FIRST CAUSE OF ACTION
**(For Breach of Contract)**

33. The preceding allegation are incorporated by reference and realleged as if fully set forth herein.

34. Plaintiff and each of the Class members entered into contract(s) covering the subject of overdraft transactions, which was drafted by and is binding on Defendant.

35. The contract(s) authorizes Defendant to assess overdraft fees only for

transactions for which there are insufficient funds/money in the account to pay the item.

36.     In addition, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

37.     The material terms of the contract(s) also included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

38.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

39.     Defendant breached the expressed terms of the contract(s) by, inter alia, charging overdraft fees when there were sufficient funds in the account to pay the items.

40.     Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

41.     As a proximate result of Defendant's breach of the contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

**SECOND CAUSE OF ACTION**
**(For Violation of State Consumer Protection Laws)**

42. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

43. Defendant has engaged in, and continues to engage in, a general business practice whereby AFCU charges overdraft fees for transactions for which there were sufficient funds in the checking account to cover the transactions, and provides misleading information regarding this practice while failing to disclose the nature of the practice, to increase overdraft fees.

44. Defendant's conduct also violated, *inter alia*, the Alaska Unfair Trade Practices and Consumer Protection Act (Ak. St. §§ 45.50.471(a) et seq.); the California Unfair Competition Law (Bus. & Prof. Code § 17200 et seq); the Washington Consumer Protection Act (RCW 19.86 et seq,); and the Arizona Consumer Fraud Act (A.R.S. § 44-1522(A) et seq).

45. By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has committed unfair and deceptive practices prohibited by the statutes set forth above.

46. By reason of the foregoing, Defendant has been improperly and unjustly enriched to the detriment of Plaintiff and the Class members in an amount to be proven at trial. Plaintiff and the Class members are entitled to have Defendant disgorge and restore to Plaintiff and the Class members all monies wrongfully obtained by Defendant as a result of its conduct as alleged herein.

47. Unless Defendant is enjoined from continuing to engage in this business practice, Plaintiff and the Class members will continue to be injured by Defendant's wrongful actions and conduct. Therefore, Plaintiff and the Class members are entitled to injunctive relief.

**THIRD CAUSE OF ACTION**
**(For Unjust Enrichment/Restitution)**

48. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

49. Defendant received millions of dollars as a result of the unlawful, wrongful and unjust misconduct alleged above.

50. As a result, Plaintiff and the Class members have conferred a benefit on Defendant. Defendant has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred. Defendant will be unjustly enriched should it be allowed to retain such funds. Defendant should be required to refund the money it unjustly retains.

## FOURTH CAUSE OF ACTION
### (For Money Had and Received)

51. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

52. Defendant has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

53. As a result, Defendant has in its possession money which in equity belongs to Plaintiff and the Class members which should be refunded to Plaintiff and the Class members.

## FIFTH CAUSE OF ACTION
### (Negligence)

54. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

55. As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. Defendant, and Does 1 through 10, had and continue to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment though its own wrongful acts. Specifically, Defendant, and Does 1 through 10, owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there were sufficient funds in the account when doing so was in conflict with the language of the marketing materials and contracts.

56. Defendant, and Does 1 through 10, breached this duty by unreasonably
-14-
CLASS ACTION COMPLAINT

mishandling the accounts of Plaintiff and the Class members by taking funds from Plaintiff and the Class members by assessing overdraft fees for transactions when fees should not have been charged.

57. As a proximate result of Defendant's negligence, Plaintiff and each class member has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Violation of Electronic Funds Transfer Act)

58. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

59. Because of Defendant's misrepresentations and material omissions as to the operation of the overdraft program, any consent that Defendant obtained for class members participation in the program was fraudulently induced.

60. Because consent to participation was fraudulently induced, Defendant failed to comply with 12 C.F.R. § 1005.17 which requires affirmative consent.

61. Because of Defendant's failure to comply with 12 C.F.R. § 1005.7 they are liable for actual and statutory damages, as well as attorney fees and costs of suit pursuant to 12 U.S.C. § 1693m.

## SEVENTH CAUSE OF ACTION
### (For Permanent Injunction)

62. The preceding allegations are incorporated by reference and realleged as if fully set forth herein.

63. Defendant has acted and is continuing to act in excess of its authority under the contract terms with its customers and in violation of the law, as set forth above. Defendant's systematic and uniform practice in charging overdraft fees when there are sufficient funds in the account to pay the item is in direct breach of the customer account agreement and violation of federal regulations requiring that the conditions for which fees may be imposed must be complied with and accurately disclosed. As a result of this continued practice, Plaintiff and

the Class will suffer irreparable injury in being wrongfully charged expensive and numerous overdraft fees, resulting in significant harm to their ability to cover their living expenses.

64. Plaintiff and the Class do not have a plain, speedy, and adequate remedy in the ordinary course of law for future imminent harm resulting from Defendant's practice.

**PRAYER**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there are sufficient funds in the account, and providing accurate and reliable information regarding the overdraft practice;

5. For costs;

6. For interest;

7. For attorneys' fees under, the common fund doctrine other applicable law, and the customer account agreement;

8. For such other relief as the Court deems just and proper.

DATED: July 23, 2015    LAW OFFICE OF EHRHARDT & KELLEY

BY: */S/ Peter Ehrhardt*
   Peter Ehrhardt


MCCUNEWRIGHT LLP
Richard D. McCune
Jae (Eddie) K. Kim

THE KICK LAW FIRM, APC
Taras Kick

James Strenio
Thomas A. Segal

*Attorneys for Plaintiff*
*Brian Reith and the Putative Class*